IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

WILLIAM DAVID MORRISON et al.,

Plaintiffs,

v.  NO. 3:04-CV-023-JEC

BOB B. MANN, JR. et al.,

Defendants.

## ORDER & OPINION

This case is presently before the Court to issue a written ruling on defendants Bob B. Mann, Jr., M.D. and PAPP Clinic, P.C.'s Renewed Motion to Prohibit Gerardo Lionel Sotomayor, M.D. from Providing Expert Testimony at Trial [113]. On October 20, 2006, in the Order setting the trial date for this case, the Court indicated that it was granting the defendants' then-pending motions [113, 115] to exclude the testimony of an expert identified as such by the plaintiffs after the close of discovery: Dr. Gerardo Sotomayor. (Order [121] at 1-2). The Court noted that Judge Hunt, to whom the case had previously been assigned, had earlier struck Dr. Sotomayor's affidavit, which had been filed by the plaintiffs during litigation of summary judgment motions. Id. at 2. The Court further noted that the plaintiffs could elicit testimony from Dr. Sotomayor as a

treating physician, but not as an expert witness. *Id.* The Court further indicated its intention to issue a written order in advance of trial. *Id.*

In the interests of time, the Court did not issue a written order prior to trial. As plaintiffs' counsel repeatedly mentioned the Sotomayor matter during the trial, however, the Court now issues this written order, which had been drafted prior to trial, in the event that plaintiffs may seek to appeal the Court's decision to grant the defendants' motions and in order to explain the basis of the Court's ruling to an appellate court. The Court's reasoning in earlier orally granting these motions is as follows. Further, the Court has determined to deny the defendants' motion for costs and attorney's fees incurred in connection with the filing of their motions.

## BACKGROUND

The present disputes concern expert medical witness testimony. The purported expert at the center of the disputes is Gerardo Lionel Sotomayor, M.D., treating physician for plaintiff Kim Morrison. (Resp. of William David Morrison and Kim L. in Opp'n to Defs.' Renewed Mot. to Prohibit Gerardo Lionel Sotomayor, M.D. from Providing Expert Test. at Trial ("RODRM") [117] at 2.) Upon discovering that Mrs. Morrison had a reoccurring human papillomavirus ("HPV") condition, Dr. Sotomayor recommended that Mrs. Morrison's spouse, plaintiff William David Morrison, also be tested for HPV.

(Compl. [1] at ¶ 1.3.)

On Dr. Sotomayor's recommendation, Mr. Morrison chose to be tested for HPV. (*Id.* at ¶ 1.4.) On November 14, 2002 Mr. Morrison visited PAPP Clinic, P.C. and Bob B. Mann, Jr., M.D. with the intention of being tested. (*Id.*) The recognized, accepted method of testing for HPV in male patients usually begins with the saturation of the penis and genital area with a 3% to 5% solution of acetic acid.[1] (*Id.* at ¶ 1.6.) Plaintiffs contend that in the course of Mr. Morrison's November 14, 2002 HPV test, a solution containing 72% Acetic Acid was mistakenly applied to Mr. Morrison's penis and genitals by Lisa Kay Douthitt Parsons, R.N., a PAPP Clinic employee. (*Id.* at ¶¶ 1.9–1.10.) Plaintiffs further contend that this mistake caused Mr. Morrison severe pain, chemical burns, and long-term physical and psychological injuries. (*Id.* at ¶¶ 1.15, 1.19.) Moreover, they contend that these injuries "seriously disrupted the rights of consortium of Kim Morrison." (Compl. at ¶ 1.19.)

On February 13, 2004, plaintiffs filed a complaint with the U.S. District Court for the Northern District of Georgia, Newnan Division,[2]

---

[1] The function of the acetic acid formula is to help identify scarring indicative of HPV. (Compl. at ¶ 1.6.) The mild acetic acid solution stains abnormal areas white, assisting medical care providers in identifying HPV scarring. (*Id.*)

[2] This case was originally filed with Judge Jack T. Camp. Judge Camp recused himself on April 21, 2004 and the case was reassigned to Judge Willis B. Hunt, Jr. Judge Hunt recused himself from the case on August 8, 2005 and the matter was reassigned to Judge Julie E. Carnes.

3

alleging that the foregoing facts entitle them to damages via either a medical malpractice, breach of contract, or simple negligence cause of action. (*Id.* at ¶¶ 8.1-8.5.3.3.)

In plaintiffs' initial disclosures, Dr. Sotomayor was listed among the individuals "likely to have discoverable information that [plaintiffs] may use to support [their] claims or defenses." (Pls.' Initial Disclosures [5] at 7.) Dr. Sotomayor was therein described as being "knowledgeable about the medical condition of Kim L. Morrison which necessitated the testing of Dave Morrison for HPV." (*Id.* at 11.) In these initial disclosures, Dr. Sotomayor was not listed among the individuals "who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence" (the Rules related to expert witness testimony). (*Id.* at 8.) Plaintiffs did name several other experts, including Howard Rottener, M.D., described as an expert "knowledgeable about the standard of care required of a physician, nurse and professional corporation providing medical care." (*Id.* at 12.) In defendants' initial disclosures, defendants indicated that they had not yet identified any potential expert witnesses. (Defs.' Initial Disclosures [6] at ¶ 6.)

The discovery period in this case was originally set to last one hundred and twenty (120) days, concluding on July 27, 2004. (Joint Prelim. Planning Report and Disc. Plan [8] at 11; Scheduling Order [10].) Upon defendants' motion, the period was "extended up to and

4

including October 1, 2004." (Order of Aug. 10, 2004 [26].) On October 1, the last day of the extended discovery period, defendants filed a supplemental interrogatory response, identifying K. Jeff Carney, M.D., Pharm. D. as a likely expert witness expected to provide testimony on the issue of plaintiffs' damages in the case. (Attach. 1 to RODRM at 6-7.) Plaintiffs' counsel deposed Dr. Carney on October 18, 2004. (RODRM at 7.)

On November 11, 2004, over a month after the close of the extended discovery period, Dr. Sotomayor produced an affidavit. (Defs.' Renewed Mot. to Prohibit Gerardo Lionel Sotomayor, M.D. from Providing Expert Test. at Trial ("DRMPT") [113] at ¶ 4.) In this affidavit, Dr. Sotomayor provides commentary and opinions regarding the facts underlying the case *sub judice*. (Attach. GLS to Notice of Filing [90] at 172-185.) Specifically, Dr. Sotomayor offers, *inter alia*, opinions related to the standard of care relevant to the case, whether that standard was breached, and whether the breach was the cause of damages suffered by plaintiffs. (*Id.*) In the affidavit, Dr. Sotomayor is referred to as "an expert." (*Id.* at 2.)

Defendants filed motions to strike Dr. Sotomayor's affidavit and to prohibit his testimony at trial. (Def. Parsons' Mot. to Strike Aff. of Gerardo Sotomayor, M.D. [65]; Defs. Mann, Jr. and PAPP Clinic, P.C.'s Mot. to Strike Aff. of Gerardo Sotomayor, M.D. [66].) In these motions, defendants argued that Dr. Sotomayor's expert opinions should not be considered because he was not disclosed as an

5

expert witness during the discovery period and because his untimely disclosure was not justified. (Def. Parsons' Mot. to Strike Aff. of Gerardo Sotomayor, M.D. at 3-10; Defs. Mann, Jr. and PAPP Clinic, P.C.'s Mot. to Strike Aff. of Gerardo Sotomayor, M.D. at 2-3.) Defendants' motions to strike the affidavit were granted (Order of July 22, 2005 [91] at 1-4) but a ruling on the motion to prohibit Dr. Sotomayor's expert testimony was deferred until the pre-trial stage (*Id.* at 3).[3] This Court now considers defendants' motion to prohibit Dr. Sotomayor's expert testimony.

## DISCUSSION

**I. Dr. Sotomayor Should Not Be Permitted to Testify as an Expert**

### A. Basis of Ruling Concerning Dr. Sotomayor

Federal Rule of Civil Procedure 37(c)(1) mandates that:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

FED. R. CIV. P. 37(c)(1).

Rule 37 operates in conjunction with Rule 26. *See id.* Specifically, the restriction outlined by Rule 37 applies to three

---

[3] Judge Hunt struck Dr. Sotomayor's expert affidavit prior to ruling on defendants' motion for partial summary judgment. (Order of July 22, 2005.) In striking the affidavit, Judge Hunt's reasoning concerned issues relevant to the summary judgment stage of the proceedings but unrelated to the current dispute. (*Id.* at 3.) Therefore, Dr. Sotomayor's status as an expert warrants reconsideration for the purposes of defendants' motion to prohibit Dr. Sotomayor's testimony.

distinct methods of disclosing witnesses and information, each explained in greater detail by an individual subsection of Federal Rule 26. *See id.*; FED. R. CIV. P. 26 Subsection 26(a) outlines required disclosures, including disclosure of expert testimony. *See* FED. R. CIV. P. 26(a)(2). Under Rule 26(a), the identity of any person who may be used to present expert testimony at trial must be disclosed, along with an expert's report, "at the times and in the sequence directed by the court." FED. R. CIV. P. 26(a)(2)(C). Similarly, subsection 26(e)(1) describes a party's "duty to supplement at appropriate intervals its disclosures under subdivision [26](a) if the party learns that in some material respect the information disclosed is incomplete or incorrect." FED. R. CIV. P. 26(e)(1).

Local Rule 26.2C further expounds a party's duty to disclose expert witnesses. *See* Local R. 26.2C. The rule requires that:

Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery.

Any party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

*Id.*

Federal Rule 37 indicates that a party may avoid these restrictions if the party's untimely disclosure was "harmless." FED.

7

R. CIV. P. 37(c)(1). Most commonly, the harm associated with untimely expert witness disclosures is the non-disclosing party's inability to adequately prepare its case by deposing the witness during the discovery period. *See, e.g., Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004); *Leathers v. Pfizer*, 233 F.R.D. 687, 699 (N.D. Ga. 2006) (Evans, J.).

Both Local Rule 26.2C and Federal Rule 37 also indicate that a party may avoid these exclusionary restrictions if the party's untimely disclosure was appropriately justified. *See* Local R. 26.2C; FED. R. CIV. P. 37.[4] With respect to both rules, the appropriateness of a party's justification turns upon whether the party knew or should have known that an expert was necessary before the late stages of the discovery period. *See APA Excelsior III, L.P. v. Windley*, 329 F.Supp.2d 1328, 1338 (N.D. Ga. 2004) (Story, J.) (stating, in declaring an untimely request to name expert witnesses unjustified under Local Rule 26.2C, "[t]he need for an expert should have been apparent during discovery.") In *Reese v. Herbert*, No. Civ A 4:05-CV0193RLV, 2006 WL 1892026 (N.D. Ga. July 10, 2006) (Vining, S.J.), for example, the court denied the untimely admission of an affidavit prepared by a purported expert in law enforcement procedures because the underlying case concerned the allegedly excessive use of force by

---

[4] Local Rule 26.2C only requires that a "failure to comply [be] *justified.*" Local R. 26.2C (emphasis added). Federal Rule 37 requires that failures to comply be "*substantially justified.*" FED. R. CIV. P. 37(c)(1) (emphasis added).

8

police officers. *See id.* at *5. Importantly, admission of the affidavit was denied although a transcript of the underlying factual scenario was not provided to the purported expert until just days before the close of the discovery period. *See id.* at note 11. In disallowing the affidavit, the court noted that the untimely distribution of the transcript could only explain why the "expert was not able to produce his affidavit earlier in the discovery process," not "why [the plaintiff] did not disclose his expert earlier in the discovery process." *Id.* Similarly, in *Excelsior*, a valuation expert was barred from offering testimony in a case involving complex financial transactions. *See Excelsior*, 329 F.Supp.2d at 1338. The court reasoned that although the defendants made certain productions after the close of discovery, the plaintiffs should have known that a valuation expert was necessary to a case involving complex financial transactions. *See id.* Untimely disclosure of the expert was therefore ruled to be unjustified despite the defendants' late productions. *See id.*

Alternatively, the untimely disclosure of an expert witness is justified if necessity for the witness cannot be determined until very late in the discovery period. *See Hines v. Dean*, No. Civ.A. 1:02CV3390-MH, 2005 WL 589803, at *3 (N.D. Ga. Mar. 10, 2005) (Shoob, S.J.). In *Hines*, a musicology expert's report was not excluded although the expert was not disclosed by the defendants until the last day of an eighteen (18) month discovery period. *See id.* at *2-3.

9

The court found that the expert could not have been disclosed earlier because he only became necessary to the defendants once the plaintiff filed his contentions related to copyright infringement, three weeks before the close of discovery. *See id.* Until these contentions were filed, the defendants could not have known that the expert was necessary. *See id.* His untimely disclosure was therefore justified. *See id.* at *3.

In the case *sub judice*, defendants seek to prohibit Dr. Sotomayor's expert medical testimony at trial, arguing that Dr. Sotomayor was improperly disclosed as an expert under Federal Rule 26(a)(2), Federal Rule 26(e)(1), Federal Rule 26(e)(2), Federal Rule 37(c)(1), and Local Rule 26.2(C). (DRMPT at ¶¶ 5–6.) Plaintiffs present two alternative arguments for why Dr. Sotomayor's expert testimony should be permitted.[5] First, they argue that Dr. Sotomayor was properly disclosed as an expert in plaintiffs' initial disclosures and in response to defendants' interrogatories. (*See* RODRM at 3.) Second, they contend that because the untimely disclosure of Dr. Sotomayor was substantially justified by defendants' actions, the disclosure does not run afoul of Federal Rule 26(a)(2), Federal Rule 26(e)(1), Federal Rule 26(e)(2), Federal

---

[5] Although plaintiffs indicate that Dr. Sotomayor may now be deposed by defendants' attorneys (RODRM at 8), plaintiffs have not argued that their untimely disclosure of Dr. Sotomayor was harmless. The Court notes, however, that plaintiffs' untimely disclosure was plainly harmful, as their disclosure delayed the progress of this case, necessitated the filing of multiple evidentiary motions, and hindered defendants' abilities to prepare adequate defenses.

AO 72A (Rev.8/82)

Rule 37(c)(1), or Local Rule 26.2(C). (*See id.* at 7-9.)

Plaintiffs' first argument is plainly without merit. In plaintiffs' initial disclosures, Dr. Sotomayor is described as "knowledgeable about the medical condition of Kim L. Morrison which necessitated the testing of Dave Morrison for HPV." (Attach. A to Initial Disclosures Pls.) Nowhere in these disclosures is Dr. Sotomayor referred to as an "expert." (*See generally id.*) Moreover, the foregoing description of Dr. Sotomayor's knowledge is dissimilar to the expert knowledge which he now professes to possess. (*Compare id. with* Attach. GLS to Notice of Filing at 172-185.) The description of Dr. Sotomayor in plaintiffs' initial disclosures did not indicate to defendants' counsel that Dr. Sotomayor was intended to serve as an expert witness. Nothing in plaintiffs' description of Dr. Sotomayor indicated that he should be deposed as an expert nor indicated that defendants needed their own expert to rebut his testimony. Similarly, plaintiffs' responses to defendants' interrogatories neither identify Dr. Sotomayor as an expert nor contain a description of Dr. Sotomayor's knowledge that paints him to be an expert.[6] (*See* Answers of Pls. to First Continuing Interrogs. to

---

[6] Plaintiffs would have the Court note that "Dr. Sotomayor was identified in response to the[] 'including expert witnesses' aspect [sic] of [Defendants'] Interrogatory 1." (RODMR at 3.) Unfortunately, this fact has minimal relevance to the issue of whether Dr. Sotomayor was originally identified as an expert because the interrogatory at issue called for "each and every person, including expert witnesses . . . who has any knowledge whatsoever of any of this issue involved in the captioned suit . . . ." (Answers of Pls. to First Continuing Interrogs. to Pls. by Defs. at 6.) Plaintiffs' argument (essentially

Pls. by Defs. [70] at 8.) Therefore, Dr. Sotomayor was clearly not properly disclosed as an expert in plaintiffs' initial disclosures and interrogatory responses.

A careful examination of relevant law reveals that plaintiffs' second argument also fails. Plaintiffs claim that Dr. Sotomayor's untimely disclosure was substantially justified because defendants' expert medical witness, K. Jeff Carney, M.D., Pharm. D., was not disclosed until October 1, 2004, the last day of the extended discovery period. (RODMR at 3-8.) Plaintiffs contend that Dr. Sotomayor's purpose as an expert is to "prevent the triers of fact in this case from being hoodwinked by the credentials of [defendants' experts]." (*Id.* at 8.) Plaintiffs argue that their need for Dr. Sotomayor could therefore not have been discerned until after October 1, 2004, when Dr. Carney was disclosed as an expert witness. (*Id.* at 7.)

This argument is without merit because, notwithstanding defendants' disclosure of Dr. Carney at the end of the discovery period, plaintiffs should have known that an expert medical witness was necessary to prove their causes of action. In order to prevail in a medical malpractice action in Georgia, claimants must necessarily establish a failure to exercise the requisite degree of skill and care by a medical care provider. *See Jones v. Orris*, 616

---

that because Dr. Sotomayor was part of a group containing both expert and lay witnesses, he therefore is an expert witness) does not hold water.

12

S.E.2d 820, 824 (Ga. App. 2005) (quoting *Zwiren v. Thompson*, 578 S.E.2d 862, 864 (Ga. 2003)). Because many aspects of the medical profession are complex and nuanced, the testimony of expert medical witnesses must be used to prove that a physician's actions violated the standard of due care. *See, e.g., Beach v. Lipham*, 578 S.E.2d 402, 405 (Ga. 2003); *Walker v. Giles*, 624 S.E.2d 191, 197 (Ga. App. 2005); *Bradford v. Rossi*, 548 S.E.2d 70,71 (Ga. App. 2001). Plaintiffs should therefore have known, prior to defendants' disclosure of Dr. Carney, that expert medical witnesses were required to establish a necessary element of their malpractice cause of action and to rebut any potential defense witnesses.[7] Therefore, under the standard set forth in *Reese* and *Excelsior*, defendants' disclosure of Dr. Carney at the end of discovery does not justify plaintiffs' untimely disclosure of Dr. Sotomayor. Accordingly, as both of plaintiffs' arguments were unmeritorious, the Court granted defendants' motion to prohibit Dr. Sotomayor's testimony.

### B. Impact of Sotomayor Ruling on Carney Testimony

After this Court had indicated that it would be granting the defendants' motions to strike any expert testimony by Dr. Sotomayor, the plaintiffs filed a motion to strike the testimony of Dr. Carney:

---

[7] Plaintiffs seemingly have understood the importance of expert medical witnesses throughout this case, as they identified Howard Rottener, M.D. in their Initial Disclosures as an expert "knowledgeable about the standard of care required of a physician, nurse and professional corporation providing medical care." (Answers of Pls. to First Continuing Interrogs. to Pls. By Defs. at 7.)

13

the defendants' expert witness on causation. The Court orally denied that motion at the pretrial conference held on February 7, 2007. As plaintiffs' counsel repeatedly articulated his displeasure at allowing Dr. Carney to testify, given the Court's ruling on Dr. Sotomayor, some further discussion is perhaps useful.

As noted, Dr. Sotomayor was Mrs. Morrison's gynecologist. Plaintiffs disclosed him early on as a fact witness, but did not identify him as an expert until November 15, 2004, when they attached his affidavit to their response to defendants' motion for summary judgment. In his affidavit, Dr. Sotomayor offered, for the first time, his "expert" opinion concerning defendants' standard of care with regard to their treatment of Mr. Morrison and their breach of that standard. Defendants moved to exclude Dr. Sotomayor's expert testimony, citing Local Rule 26.2, and Federal Rules 26 and 37. Judge Hunt accepted defendants' argument, and excluded Dr. Sotomayor's affidavit in ruling on the summary judgment motion.

In their motion to exclude Dr. Carney' testimony, plaintiffs essentially argue that if Dr. Sotomayor is precluded from testifying as an expert, Dr. Carney must also be precluded from testifying. More specifically, plaintiffs argue that: 1) Dr. Sotomayor was intended to rebut Dr. Carney's testimony, and now that Dr. Sotomayor has been excluded it would be unfair to permit Dr. Carney to testify; and 2) to be evenhanded in its application of Local Rule 26.2, the Court must exclude Dr. Carney's testimony, for the same reason that

14

it excluded Dr. Sotomayor's testimony. Plaintiffs' arguments are not persuasive. First, Dr. Sotomayor was not, nor could he ever have been, a rebuttal witness to Dr. Carney. Dr. Carney is a urologist, who proposes to testify as to Mr. Morrison's urological damage. Dr. Sotomayor is Mrs. Morrison's gynecologist. Plaintiffs designated him as a fact witness to testify as to his treatment of Mrs. Morrison, but his excluded expert testimony involved defendants' standard of care. It is doubtful that Dr. Sotomayor, as a gynecologist, is even qualified to testify as to defendants' standard of care.[8] In any case, fairness did not require that Dr. Sotomayor be permitted to respond to Dr. Carney's opinions, because Dr. Sotomayor's excluded testimony is not responsive, or even related, to Dr. Carney's proposed testimony.

Neither did an evenhanded application of Local Rule 26.2 require the Court to exclude Dr. Carney's testimony. On this point, the sequence of the parties' expert designations is important. On July 6, 2004, plaintiffs identified Dr. Rottener as a urological expert. Defendants deposed Dr. Rottener on September 23, 2004. Shortly thereafter, defendants identified Dr. Carney as an expert **to rebut** Dr. Rottener's testimony. Local Rule 26.2 is intended to give both parties an opportunity to designate an expert on a particular topic. In this case, both parties received that opportunity: plaintiffs

---

[8] Of course, as Dr. Mann stipulated to his liability during the trial, no further testimony concerning his breach of the standard of care was necessary.

15

identified Dr. Rottener as a urological expert and defendants identified Dr. Carney as a rebuttal expert. Moreover, plaintiffs deposed Dr. Carney, and identified his deposition as one that the plaintiffs might introduce at trial. Accordingly, on these facts, the Court would have had no basis to disallow Dr. Carney's testimony.

## II. Defendants Are Not Entitled to Costs and Attorney's Fees

Defendants have also asked the Court to award them the costs and attorney's fees associated with filing their motion to strike and the supporting memorandum. (See DRMPT at 4.) The Court has the power to impose sanctions, including the award of attorney's fees, for failures to properly disclose expert witnesses. See FED. R. CIV. P. 37(c)(1) ("In addition [to prohibiting the use of evidence obtained in violation of Rule 37] . . . the court . . . may impose other appropriate sanctions.") Whether to wield this power, however, is left to the Court's discretion. See id; Prieto v. Malgor, 361 F.3d 1313, 1318 (11th Cir. 2004). Moreover, the Court has particularly broad discretion in sanctioning discovery abuse. See Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1542 (11th Cir. 1993).

Several factors suggest that sanctions beyond evidentiary exclusion are inappropriate in the immediate case. First, plaintiffs' untimely disclosure of Dr. Sotomayor resulted in part from defendants' disclosure of its own expert, Dr. Carney, at the close of discovery. While, in the context of this case, this fact does not

give rise to a legally insufficient justification for plaintiffs' untimely disclosure, it does provide a coherent explanation for plaintiffs' erroneous conduct. This reasonable explanation suggests that plaintiffs' conduct was neither deliberate nor malicious. Moreover, plaintiffs' untimely disclosure is not part of a larger pattern of conduct. That plaintiffs' untimely disclosure was not part of a larger pattern of conduct further suggests that plaintiffs' conduct was neither deliberate nor malicious.

Because a reasonable explanation exists for plaintiffs' untimely disclosure, because plaintiffs' untimely designation is not part of a larger pattern of conduct, and because plaintiffs have already been subjected to the Rule 37(c)(1) exclusionary sanction, the Court concludes that additional sanctions are inappropriate. The Court therefore refuses to award defendants the costs and attorney's fees incurred in filing their Motion to Strike.

## CONCLUSION

The foregoing discussion provides the Court's reasoning for granting defendants' Motion to Prohibit the Testimony of Dr. Sotomayor at Trial [113]; denying defendants' request to be awarded reasonable costs and attorney's fees [113]; and denying plaintiffs' Motion in Limine to Preclude Expert Testimony by Dr. Carney [140].

SO ORDERED, this 27 day of February, 2007.

                                               /s/ Julie E. Carnes
                                         JULIE E. CARNES
                                         UNITED STATES DISTRICT JUDGE